IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RALPH D. PALMER,

Plaintiff,

v.

JOANNE B. BARNHART
Commissioner of Social Security,

Defendant.

CV 04-6255 TC

FINDINGS AND
RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff Ralph D. Palmer brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits. For the reasons set forth below, the Commissioner's decision should be affirmed .

Palmer was born on March 5, 1955, and was 49 years old at the time of the hearing. He

completed the eighth grade. He contends that he has been disabled since May 21, 2001. The medical records accurately set forth Palmer's medical history as it relates to his claim. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details will not be recounted here.

The ALJ found Palmer had not engaged in substantial gainful activity since his alleged disability onset in May 2001. The ALJ found Palmer not fully credible, and that he retains the capacity to work as a storage facility rental clerk, cashier, and office helper.

## DISCUSSION

Palmer contends that the ALJ erred by 1) failing to find that his right knee impairment was serious at steps two, four and five of the sequential evaluation; 2) finding him not fully credible; and 3) failing adequately to credit the testimony of two lay witnesses.

I. The ALJ's Step Two Determination

The ALJ found that Palmer had numerous severe impairments, including degenerative disk disease, status post fusion at multiple levels of the cervical spine, a history of acromioclavicular degenerative joint disease and impingement, status post bilateral surgeries, depression, a pain disorder, alcohol dependence, and a dependent personality disorder. Tr. 15, 19. After finding severe impairments the ALJ appropriately proceeded to step three. The ALJ's step two determination that Palmer has severe impairments is supported by substantial evidence.

II. The ALJ's Step Four Determination

At step four the ALJ determines whether Palmer is able to perform work he has done in the past. The claimant has the burden of showing that he does not have the residual functional capacity to engage in past relevant work. *Lewis v. Apfel*, 236 F3d 503, 513 (9th Cir 2001).

2 - FINDINGS AND RECOMMENDATION

The ALJ found that Palmer was unable to perform his past work and had the following restrictions:

> The evidence has established that the clamant is limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pound maximum. He is unable to climb ladders or crawl. He is limited to occasional stooping. He is limited in his capacity to bend over or twist. He needs an occasional opportunity to change positions. He is limited from reaching above the shoulder level. He has limited range of motion at the neck with limited extension or motion to that level. He has moderate limitations understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, tolerating changes in the work setting, and tolerating exposure to dangerous hazards. The claimant has moderate limitations affecting his ability to handle detailed work or maintain attention and concentration for extended periods. He can tolerate only limited stress and an undemanding work pace. Tr. 17, 19.

Palmer contends that the ALJ erred by failing to include limitations resulting from his knee impairment. Between June and August 2002 Scott R. Grewe, M.D., performed arthroscopic surgery on Palmer's right knee. Tr. 232. Dr. Grewe wrote:

> Findings showed some mild lateral compartment degenerative changes. He also had a lateral meniscus tear and a cyst which were treated and should be resolved. The patient will have some mild residual impairment based on his loss of lateral meniscal tissue.
>
> The patient will have temporary limitations of his ability to ambulate and work. He is expected to improve with time and with some postoperative rehabilitation. He will have some mild permanent decreased functional level.
>
> . . .
> The patient has no limitations in his ability to sit, bend, handle objects, hear, speak, or use transportation. His ability to ambulate will be mildly symptomatic. *Id*

3 - FINDINGS AND RECOMMENDATION

Palmer contends that the ALJ failed to include in the residual functional capacity finding a limitation on standing or walking arising from his knee injury. However, Dr. Grewe did not specify that Palmer would have any continuing inability to walk or stand. Dr. Grewe's statements regarding a "mild" impairment do not constitute evidence that Palmer would be unable to walk or stand for six out of eight hours per day as is required for light work. In addition, the storage facility rental clerk job could be performed either sitting or standing. Tr. 377. The ALJ adequately addressed Palmer's limitations arising from his knee surgery by finding him limited from lifting and carrying more than ten pounds frequently and unable to climb ladders or crawl. The ALJ's residual functional capacity analysis is supported by substantial evidence.

III. Palmer's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick*, 157 F.3d at 724. *See also Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan*, 246 F.3d at 1208. The ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen,* 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Palmer suffers from degenerative disk disease, status post fusion at multiple levels, acromioclavicular degenerative joint disease, depression, a pain disorder with psychological and medical features, alcohol dependence, cannabis dependence, and a dependent personality disorder. These impairments could reasonably be expected to cause some degree of pain. Therefore, the ALJ may not simply reject Palmer's symptom testimony. *Id* To determine whether Palmer's testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen,* 80 F.3d at 1284.

The ALJ noted that Palmer had a surgical fusion at C5-C6 in March 2000 and a fusion at C6-C7 in November 2001 and has since remained orthopedically stable from a clinical standpoint. The ALJ noted that Palmer continued to complain of chronic neck pain, and stated:

> On April 1, 2002, some months after his neck surgery, Dr. Grewe stated that he did not find any specific active pathology to account for the claimant's reports of ongoing neck pain. Tr. 16.

Palmer contends that the ALJ misconstrued Dr. Grewe's report, which states:

> He had x-rays taken today. He has a very slight reversed curve, but for the most part is solidly fused with good disk spaces, except for the fused segments. He had an old fusion at C6-C7 and a new fusion at C5-C6, which now appears to be solid....He missed several physical therapies because of his other commitments. He...only had about two treatments....On his current examination, he has marked tenderness in the trapezius muscle area on the left. He has some suboccipital pain on the left. He describes some grinding in his neck, but certainly to look at his plain films, I do not see any cause for it. Tr. 262.

Palmer argues that the fact that his pain testimony is not fully corroborated by the objective medical findings is not a clear and convincing reason for rejecting it. Assuming that this is true, the ALJ found several other reasons to question Palmer's credibility, none of which are questioned by Palmer now.

The ALJ found that Palmer's credibility was undermined because he testified that he was virtually incapacitated by musculoskeletal pain, and could stand no more than a few minutes at a time and walk no further than a block and a half. However, Palmer stated that he was not under any treatment for that pain and was not currently using prescription pain medication. Tr. 17, 341-343. The ALJ found Palmer's credibility was undermined by his failure to complete treatment recommendations such as physical therapy. Tr. 16-17, 262.

The ALJ noted records from other examining sources indicating that Palmer tended to minimize his alcohol use and over-focus on his physical problems. Tr. 16, 285-90. Gregory A. Cole, Ph.D., examined Palmer in August 2003 and questioned "whether or not the client provided his best effort on this task." Tr. 288.

Although not specifically cited by the ALJ, careful review of the record indicates that Palmer reported in August 2000 that he had contained a grass fire with a tractor and dozer blade. Tr. 271. At the same doctor's appointment, he explained bruises on his right arm as resulting from his attempts to load a ram into a truck. *Id* Palmer was seen in the emergency room in October 2001 for an arm injury suffered when he fell down dancing in his dining room. Tr. 230.

The ALJ's determination that Palmer was not fully credible is supported by substantial evidence.

IV. Lay Witness Testimony

A. Linda Olson

In December 2001 Ms. Olson completed a form entitled Third Party Information on Activities of Daily Living and Socialization. Tr. 108-119. Ms. Olson stated that she lived with Palmer, that he went to the grocery store weekly, that he drove when he had gas money, and that he did not take walks or get other exercise. Tr. 111-12. Ms. Olson reported that Palmer prepared meals for himself and others, cleaned up afterward, and required no assistance with personal hygiene. She reported that Palmer did the laundry one to two times a week, vacuumed weekly, took out the trash, and washed the car. He read novels and newspapers, and used the telephone to call friends and family. Tr. 115-16.

Palmer contends that the ALJ erred by not commenting on Ms. Olson's testimony.

7 - FINDINGS AND RECOMMENDATION

However, nothing in Ms. Olson's report supports greater limitations than were assessed in the ALJ's residual functional capacity finding, and his failure to comment on this testimony was not legal error.

B. Christie Vangen

Ms. Vangen testified that she lives near Palmer and sees him daily. When asked whether she was aware of anything that might affect Palmer's ability to work, she testified:

> Well, he's in so much pain all the time that he really needs a lot of rest and he mostly spends time in the recliner because his legs and hips have been giving him trouble, along with his neck and arms. And he just seems to be progressively getting worse and worse. Tr. 372.

Ms. Vangen stated that Palmer spends "most of the time" in his recliner, with a heating pad on his lower back, his neck supported, and his feet up. Tr. 372. She testified that "[A]bout the only thing he does do is get up and take a shower...." *Id*

As to Ms. Vangen's testimony the ALJ said:

> She reported that he appears to be in constant pain spending virtually all the time sitting with his feet elevated. She stated that she sees him virtually every day and in her opinion his presentation of pain and the limitations related to it appear genuine. Even if her statement could be accepted as reliable, it only is a reflection of her lay personal perception. Some of her observations do not appear to be related to any significant underlying medical impairment, such as Mr. Palmer's alleged need to elevate his feet for extended periods during the day. It is possible that the claimant presents to his friend as in constant pain, but his demeanor might be influenced by his somatic focus and dependent personality traits, characteristics noted by Dr. Cole, as discussed above. Additionally, even if Ms. Vangan's [sic] testimony could be accepted at face value, it cannot be assumed that the clamant [sic] would be in constant pain as alleged if he was to seek and comply with appropriate medical treatment.

/ / /

> Finally, Ms. Vangen's testimony makes no reference to the claimant's
> ongoing drug and alcohol abuse, despite its prominence in his life, a
> factor which should be readily apparent to anyone who sees him on a
> daily basis. That gives rise to the concern that her testimony either is
> incomplete, or she does not know him as well as alleged. Given the
> claimant's ongoing polysubstance abuse; the absence of any current
> acute orthopedic injury; and the limited medical treatment, it is
> questionable whether his alleged inactivity is the result of musculo-
> skeletal injury rather than the product of frequent intoxication. As
> noted, the claimant has exhibited a pattern of overstating the nature
> and severity of his physical impairments, while minimizing the extent
> of his substance abuse problem. For the reasons stated above, Ms.
> Vangen's testimony is deemed insufficient to overcome concerns
> about the claimant['s] credibility, as well as factors suggesting that
> he is not as physically impaired as alleged. Tr. 17.

Palmer contends that the ALJ mischaracterized Ms. Vangen's testimony as implying that Palmer needed to elevate his feet for medical reasons. Ms. Vangen's observation that Palmer spends virtually all of his time reclined with his feet elevated is competent lay witness evidence. Her testimony as to the reason or cause for a particular behavior is not competent. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ did not state that Ms. Vangen alleged a need for Palmer to elevate his feet. Rather, the ALJ noted that Ms. Vangen's observations "do not appear to be related to" any of Palmer's medical impairments. Tr. 17. As to Palmer's substance abuse, the ALJ properly noted that Ms. Vangen either lacked candor or knowledge. The ALJ pointed out that Palmer's behavior could be attributable to his somatic focus or dependent personality, and that his behavior might be different if her were to seek and comply with medical treatment.

The ALJ articulated specific and legitimate reasons to support his conclusion that Ms. Vangen's testimony as to the cause of Palmer's inactivity was not entirely credible.

/ / /

9 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

The ALJ's finding that Palmer is not disabled is based on the correct legal standards and supported by substantial evidence. For these reasons, the Commissioner's decision should be affirmed and the case should be dismissed.

Dated this 8th day of Sept, 2005.

_____
THOMAS M. COFFIN
United States Magistrate Judge